IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ecarson Pitt Devco, LLC       :
       :
       v.       : No. 1538 C.D. 2023
       : Argued: October 8, 2024
City of Pittsburgh Zoning       :
Board of Adjustment and       :
City of Pittsburgh,       :
       :
       Appellants  :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK               FILED: December 18, 2024


City of Pittsburgh Zoning Board of Adjustment (ZBA) and City of Pittsburgh (together, the City), appeal from the order of the Court of Common Pleas of Allegheny County (trial court), which reversed the ZBA's Decision denying the Application for Special Exception (Application) of Ecarson Pitt Devco, LLC (Wolfgate) to install a 45-foot-high electronic advertising sign[1] with a 2-sided 378-

---

[1] Section 919.01.C.5. of the of the Zoning Code of the City of Pittsburgh, Pennsylvania (Code), defines "Electronic Sign" as:

> any sign, video display, projected image, or similar device or portions thereof with text, images, or graphics generated by solid state electronic components. Electronic signs include, but are not

**(Footnote continued on next page…)**

square-foot surface area (Sign), at 2912 East Carson Street, Pittsburgh (Property), located in the Advertising Sign Overlay (AS-O) District of the City's Urban Industrial (UI) Zoning District.[2]  We affirm.

The facts as found by the ZBA[3] may be summarized as follows.  As noted above, the Sign is to be located on the Property at 2912 East Carson Street in

limited to, signs that use light emitting diodes (LED), plasma displays, fiber optics, or other technology that results in bright, high-resolution text, images, and graphics.

In turn, Code Section 919.01.C.2. defines "Advertising Sign" as "a sign that directs attention to a business, commodity, service or entertainment, conducted, sold or offered: (a)  Only elsewhere than upon the premises where the sign is displayed; or (b)  As a minor and incidental activity upon the premises where the sign is displayed."

[2] Code Section 907.01.C provides: "The uses allowed within the AS-O District shall be those allowed by the underlying zoning district, plus Advertising Signs, *which shall be a use Permitted By-Right, subject to compliance with all other applicable regulations*."  (Emphasis added.)  Regarding the applicable regulations, Code Section 907.01.D provides: "The development regulations that apply within the AS-O District shall be those of the underlying zoning district, plus the Sign Regulations of Chapter 919. Development within the AS-O District shall specifically be subject to the Advertising Sign Regulations of Sec[tion] 919.02."  In turn, with respect to "New Electronic Advertising Signs," Code Section 919.02.C.3(d)(i) states, in relevant part: "Electronic Signs . . . as defined in Section 919.01.C.3 shall be permitted within AS-O - Subdistrict A only, and shall be approved by the [ZBA] as Special Exceptions, according to the Special Exception Review Standards of 922.07, and subject to the following [additional] criteria: . . . *New electronic advertising signs are prohibited in City Designated Historic Districts and the* **[*Riverfront (RIV)*] *Zoning District*."  (Emphasis added.)  Finally, with respect to all "Advertising Signs," Code Section 919.02.D.1. provides, in pertinent part: "The face of an advertising sign shall be situated so that it is not visible within a sight distance of three hundred fifty (350) feet of . . . **[*p*]*roperty in a residential or* [*Educational/Medical Institution (EMI)*] *Zoning District*."  (Emphasis added); *see also Appeal of M.G.H. Enterprises*, 480 A.2d 394, 396-97 (Pa. Cmwlth. 1984) (holding that a zoning ordinance requirement for "sight distance" of 300 feet was minimum requirement, and this did not exclude possibility that under certain conditions, as board found to exist, longer distance would be required in order to render specific road safe).

[3] As this Court has explained:  "[T]he record before the local agency is full and complete, if 'there is a complete and accurate record of the testimony taken so that the appellant is given a **(Footnote continued on next page…)**

2

a UI Zoning District in the South Side Flats neighborhood in Pittsburgh. Because it is in the UI Zoning District, the Sign will also be within the AS-O District. The Property abuts property in the East Carson Street Local Neighborhood Commercial (LNC) District, which contains several residential properties. The Specially Planned South Side Works (SP-5) District is located immediately across East Carson Street, which contains a multi-unit residential development. The Property is also proximate to the East Carson Street Historic District, which extends along East Carson Street

---

base upon which he may appeal, and also, that the appellate court is given a sufficient record upon which to rule on questions presented.'" *Sparacino v. Zoning Board of Adjustment*, 728 A.2d 445, 447 n.4 (Pa. Cmwlth. 1999) (citations omitted). Moreover, as we have observed:

> Section 754 of the Local Agency Law (Law), 2 Pa. C.S. §754, governs the court's disposition of an appeal from the local agency. Under Section 754(b) of the Law, the court must affirm the local agency's decision where a complete record was developed before the local agency, unless it determines that constitutional rights were violated, that an error of law was committed, that the procedure before the agency was contrary to statute, or that necessary findings of fact are not supported by substantial evidence.

*Id.* at 447 (citation omitted).

Finally, where, as here, the trial court does not take any additional evidence on appeal, our review on further appeal to this Court is limited to determining

> whether the [ZBA] committed an abuse of discretion, [or] an error of law, or made findings of fact not supported by substantial evidence. An abuse of discretion occurs where the [ZBA's] findings are not supported by substantial evidence. Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a finding of fact. If the question involves "statutory interpretation," which presents a question of law, our standard of review is *de novo*, and our scope of review is plenary.

*Czachowski v. Zoning Board of Adjustment of City of Pittsburgh*, 271 A.3d 973, 979 n.9 (Pa. Cmwlth. 2022) (citations omitted).

3

from South 27th Street to South 6th Street.  *See* Reproduced Record (RR) at 277a-78a.[4]

Timothy Earle, on behalf of Wolfgate, submitted the Application to the City seeking approval for the Sign in the AS-O District of the City's UI Zoning District.  As noted above, Section 919.02.C.3 of the Code permits new "Electronic Advertising Signs" by special exception in the AS-O District subject to the enumerated criteria.

On February 16, 2023, the ZBA conducted a virtual public hearing on the Application.  At the hearing, Wolfgate presented evidence and confirmed that only static text and graphics would be displayed and that they would not change more than once every 30 seconds.  Wolfgate also provided evidence and confirmed that the Sign's luminance would not be brighter than 2,500 nits between sunrise and sunset, and 250 nits at other times.  Wolfgate committed to not operating the sign between midnight and 5:00 a.m., and committed to incorporating light blocking technology that would mitigate the visual impacts of the sign on nearby residential properties.  Wolfgate also committed to submit an annual report to the City certifying that the Sign complies with the Code's motion, dwell time, brightness, and other applicable requirements.  *See* RR at 278a.

Wolfgate presented the testimony of Joshua Haydo, P.E., a traffic engineer, who presented an analysis of the Sign's impact on traffic.  His study concluded that the sign would not interfere with any traffic sign, signal or device, or obscure drivers' view of traffic on East Carson Street or at any nearby intersections.

---

[4] Pa.R.A.P. 2173 states: "Except as provided in Rule 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."  Although the pagination of the City's Reproduced Record does not conform to the foregoing Rule, we will cite to the relevant pages as required by the Rule.

He also asserted that the Sign would comply with all of the Pennsylvania Department of Transportation's relevant regulations for electronic advertising signs. *See* RR at 278a.

Wolfgate also presented the testimony of Andrew Schwartz, of Environmental Planning and Design, who submitted a report that opines that the Sign would comply with the Code's special exception criteria and would not have any detrimental impact on the surrounding neighborhood. *See* RR at 278a. However, "[t]o the extent that the report sought to supplant the [ZBA's] role in considering compliance with the Code's requirements and in evaluating the evidence presented, the [ZBA] found the report to be of limited evidentiary value or credibility." *Id.*

Wolfgate also presented Exhibit 3, which identifies the linear distances between the Sign and the features identified in Section 919.02.D., but does not identify any "sight distances" or whether the Sign would be visible with respect to the features included in the Exhibit. RR at 278a. The Exhibit also does not include linear distances between the residential properties in the LNC District from the East Carson Street Historic District, or from the SP-5 District, and does not indicate where the Sign would be visible with respect to those features. *Id.* at 279a.

In opposition to the Application, City Councilperson Bruce Kraus from District 3, which includes the Property and the surrounding area, appeared and adopted the objections to the Sign submitted by Southside community groups. RR at 279a. Barbara Rudiak appeared on behalf of the Southside Community Council (SSCC), which is a "Registered Community Organization" (RCO) under Code

5

Section 178E,[5] in opposition to the Sign. In a letter to the ZBA, the SSCC expressed concerns about the visual impact of the Sign on the nearby East Carson Street Historic District and on residential properties in the vicinity. In the letter, the SSCC concludes that the location of the Sign is "contrary to the character and context of the neighborhood, is a driving/pedestrian safety hazard, degrades quality of life, and will have a negative impact on the South Side and the East Carson Street corridor." RR at 279a.

Candace Gonzales also appeared at the hearing in opposition to the Application and presented a letter from the Southside Chamber of Commerce (Chamber). The Chamber's letter notes the proximity of the Sign to the East Carson Street Historic District; describes the historic features of that District; and describes

---

[5] Code Section 178E.04 provides, in pertinent part, that the City's "Department of City Planning shall register an organization as an RCO if it finds that the organization meets the requirements of Section 178E.03 and 178E.04." In turn, Code Section 178E.08(a) states: "The City shall develop a Neighborhood Planning Manual which outlines policies and procedures to formally adopt/recognize Neighborhood Plans developed by [RCOs]." To that end, Code Section 178E.08(c) provides, in relevant part:

> The Department of City Planning shall require an applicant to coordinate with the applicable RCO to schedule a time, date and place of a public meeting to discuss the applicant's proposal. That meeting, in which the applicant must participate, must take place at least thirty (30) days prior to the first public hearing. The applicant shall then notify the Department of City Planning and neighborhood planner of the time, date and place of the public meeting. If there are two or more RCO[s] whose registered boundaries include the applicant's property, the Department of City Planning shall schedule a time, date and place of a public meeting to discuss the applicant's proposal with the applicable RCO[s]. That meeting, in which the applicant must participate, must take place at least thirty (30) days prior to the first public hearing. A meeting shall be required between an applicant and the applicable [RCO(s)] for any development activity that requires a public hearing and where such projects involve the following [enumerated types of development].

6

the visual impact that the Sign at the entrance to the District would have on the historic nature and character of the neighborhood. *See* RR at 279a.

Finally, Janice Serra appeared in opposition to the Application and presented a written statement to the ZBA. Wolfgate's counsel and counsel for the SSCC submitted proposed findings of fact and conclusions of law to the ZBA as of March 2, 2023, and the ZBA closed the record as of that date. *See* RR at 279a.

On April 20, 2023, the ZBA issued its Decision, which stated, in relevant part:

- **[Wolfgate] Did Not Demonstrate Compliance with the Specific Separation Requirements**

10. [Wolfgate's] Exhibit 3 indicates the linear distances between the sight of the proposed electronic advertising sign and features identified in [Code] Section 919.02.D. That exhibit did not demonstrate that the proposed sign would be situated so that it would not be **"visible within a sight distance"** of 350' of the features that the exhibit identifies. [Wolfgate] did not present any evidence as to what the "sight distance" of the sign might be or where the sign might be visible with respect to the identified features.

11. [Wolfgate's] Exhibit 3 does not include distances from the SP-5 District or residential properties in the LNC District. The exhibit seems to assume that the separation requirement from property "in a residential or EMI Zoning District," is limited to properties that are "zoned Residential." The [ZBA] does not adopt that interpretation. The Code includes references to both to "residential" property and to property that is "zoned Residential." A property may be "residential" without being "zoned Residential."

12. This is particularly significant where the SP-5 District is located immediately across East Carson Street from the [Property]. The first two permitted uses listed for

7

that District are "Single-Unit Detached" and "Multi-Unit" residential uses and it is a "residential" district. Further, a multi-unit residential building, in the SP-5 District, is located across East Carson Street from the proposed sign site.

13. The intent of [Code] Section 919.02.D is to ensure that advertising signs are not visible within a sight distance of 350' of a variety of features, including residential properties. Thus, an interpretation that would require the [ZBA] to ignore the residential nature of the SP-5 District and in the LNC District, is not reasonable.

14. Because [Wolfgate] did not present sufficient credible evidence with respect to the requirements of [Code] Section 919.02.D[.], [Wolfgate] did not meet its initial burden to demonstrate compliance with the special exception criteria. The application for special exception thus must be denied.

RR at 281a (emphasis in original).[6] Accordingly, the ZBA issued its Decision denying Wolfgate's "request for a special exception pursuant to [Code] Section 919.02.C.3[.]," *id.* at 282a, and Wolfgate appealed the ZBA's Decision to the trial court under the Local Agency Law on May 4, 2023.[7]

On May 24, 2023, the ZBA filed a Return of the record, and filed a Supplemental Return on May 25, 2023. On July 17, 2023, Wolfgate filed a Motion

[6] Alternatively, although not necessary based on its disposition, the ZBA determined that the objectors to the Application raised specific issues and presented sufficient credible evidence of the adverse impacts of the Sign on the Property. *See* RR at 281a-82a. The ZBA also noted that Wolfgate challenged the standing of the individual objectors and the SSCC; however, "[b]ecause [Wolfgate] did not meet its burden of proof with respect to the requested relief, it [wa]s not necessary to rule with respect to the standing of the individual objectors and the community groups." *Id.* at 282a. Moreover, the ZBA noted "that [Wolfgate] did not challenge the standing of Councilperson Kraus, who has standing to represent the interest of all of the residents of City Council District 3, which includes the [Property] and the surrounding area," and that "Councilperson Kraus adopted the position of the [SSCC] and the information it provided to the [ZBA]." *Id.*

[7] The City subsequently intervened in Wolfgate's appeal.

8

to Strike Portions of the Return (Motion) to exclude evidence that was not submitted to the ZBA during the February 16, 2023 hearing. *See* RR at 325a-36a.[8] On July 18, 2023, following argument, the trial court granted the Motion. *See id.* at 337a-38a.

Ultimately, on November 28, 2023, the trial court issued an Opinion and Order reversing the Board's Decision, and granting Wolfgate's Application. *See* RR at 449a-59a. The City then filed the instant appeal of the trial court's order.

On appeal, the City claims: (1) the trial court abused its discretion[9] in excluding portions of the Return on appeal; (2) the trial court erred in holding that the Board erred in determining that Code Section 919.02.C.3(d)(i) prohibited the installation of the Sign near the Historic and RIV[10] Districts; and (3) the trial court

---

[8] On March 2, 2023, following the hearing, both Wolfgate and SSCC submitted proposed findings of fact and conclusions of law, which addressed the legal standards applied to the evidence that was admitted at the ZBA's hearing. However, SSCC's proposed findings also included references to a 280-unit multi-family development, "Connections at Southside," as well as a photograph of that development. *See* RR at 109a, 114a, 115a, 121a. In a letter dated that same day, Rick Eckstrom, a member of SSCC's Development Activities Review Team, submitted a letter and four different studies in opposition to the Application, which were never introduced at the ZBA's hearing. *See id.* at 126a-275a. The ZBA included all of the foregoing as part of the Return that was filed in the trial court, which Wolfgate sought to exclude through the Motion.

[9] *See, e.g.*, *Lamar Advantage GP Company v. Zoning Hearing Board of Adjustment of City of Pittsburgh*, 997 A.2d 423, 436 (Pa. Cmwlth. 2010) ("Upon review, we discern no abuse of discretion in the trial court's decision that supplementation of the record was unnecessary based on the assertions in the parties' briefs.").

[10] Code Section 902.01.A.3(d) provides:

The following Special Purpose Districts are established:

\* \* \*

d) RIV, R-GI, Riverfront General Industrial

**(Footnote continued on next page…)**

9

erred in holding that the Board erred in determining that Code Section 919.02.D.1. prohibited the installation of the Sign within a 350-foot sight distance of a residential structure.

However, preliminarily, we find that the trial court did not abuse its discretion in striking those portions of the Return that contained information that was not admitted at the ZBA hearing. The Return was "complete" for purposes of the Local Agency Law without the addition of materials not received by the ZBA during the hearing. *See, e.g.*, *Sparacino*, 728 A.2d at 447 n.4 ("[T]he record before the local agency is full and complete, if 'there is a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal, and also, that the appellate court is given a sufficient record upon which to rule on questions presented.'") (citations omitted).[11] As a result, the trial court did not abuse

(1) RIV-IMU, Riverfront Industrial Mixed Use

(2) RIV-MU, Riverfront Mixed Use

(3) RIV-NS, Riverfront North Shore

(4) RIV-RM, Riverfront Mixed Residential

[11] *See also G.W. by H.W. v. Avonworth School District*, 297 A.3d 28, 36-37 (Pa. Cmwlth. 2023) ("Unlike Section 754(a) of the Local Agency Law, under Section 754(b) of the Local Agency Law, reopening the [b]oard's record to accept new evidence after the [b]oard rendered its decision was not among the actions the trial court could take. See 2 Pa. C.S. §754(b). Therefore, the trial court should not have permitted the parties to take [the m]other's deposition.") (footnote omitted); *Monaghan v. Board of School Directors of Reading School District*, 618 A.2d 1239, 1242 (Pa. Cmwlth. 1992) ("[S]ince the final state audit report and the unemployment award were not made until after the [s]chool [b]oard's decision, [the business manager] cannot now argue that the record was not full and complete because it did not contain something that did not exist at the time of the [s]chool [b]oard's proceedings. *See Lawrence Township Appeal*, [544 A.2d 1070 (Pa. Cmwlth. 1988)] (evidence allegedly discovered after a hearing before the township board of supervisors would not warrant finding 'incomplete' record in proceedings before township board so as to support trial court's hearing appeal *de novo* pursuant to [the L]ocal [A]gency [L]aw.").

its discretion in removing materials from the Return and Supplemental Return that were not submitted at the ZBA hearing.

In addition, the trial court did not err in reversing the Board's determination that Code Sections 919.02.C.3(d)(i) and 919.02.D.1. prohibited the installation of the Sign near the Historic and RIV Districts or within a 350-foot sight distance of a residential structure because the ZBA erred in interpreting the foregoing Code provisions. As this Court has explained:

> Where, as here, the trial court has not taken additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. When construing local zoning ordinances, courts are guided by the principles of the Statutory Construction Act of 1972, 1 Pa. C.S. §§1501-1991, which provides, [in Section 1903(a),] that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." [1 Pa. C.S. §1903(a).]
>
> The traditional rule of deference to zoning hearing board interpretations of their ordinances, however, is balanced by the principle that any ambiguity and conflict in the language of the ordinance must be resolved in favor of the landowner and the least restrictive use of the land. Moreover, "[w]hile the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit." This Court has held that it is an abuse of discretion for a zoning hearing board to narrow the terms of an ordinance and further restrict the use of a property.

*Reihner v. City of Scranton Zoning Hearing Board*, 729 A.2d 194, 197 (Pa. Cmwlth. 1999) (citations omitted).

11

As outlined above, Code Section 907.01.C provides: "The uses allowed within the AS-O District shall be those allowed by the underlying zoning district, *plus Advertising Signs, which shall be a use Permitted By-Right*, subject to compliance with all other applicable regulations." (Emphasis added.) In addition, Code Section 919.02.D.1 provides, in pertinent part: "The face of an advertising sign shall be situated so that it is not visible within a sight distance of three hundred fifty (350) feet of . . . **[p]roperty in a residential or EMI Zoning District**." (Emphasis added.) Thus, construed according to its common and approved usage, the word "residential" is used in Section 919.02.D.1 to modify, and therefore limit, the words "Zoning District."

Moreover, Code Section 902.01.A.3(a) establishes the EMI Special Purpose District, while Section 902.01.A.1 establishes the Residential Zoning Districts in the City by combining an enumerated Use Subdistrict with an enumerated Development Subdistrict listed therein.[12] *See also* Section 903.01.B of

---

[12] Specifically, Code Section 902.01.A.1 states:

> Residential Zoning Districts are formed by combining a Use Subdistrict with a Development Subdistrict. The following Use and Development Subdistricts are established:
>
> (a) Use Subdistricts[:]
>
>     (1) R1D, Single-Unit Detached Residential[;]
>
>     (2) R1A, Single-Unit Attached Residential[;]
>
>     (3) R2, Two-Unit Residential[;]
>
>     (4) R3, Three-Unit Residential[;]
>
>     (5) RM, Multi-Unit Residential[;]

**(Footnote continued on next page…)**

the Code ("The residential zoning regulations of this chapter consist of a series of five (5) Use Subdistricts and five (5) Development Subdistricts. ***This approach results in twenty-five (25) possible residential zoning districts, each of which is regulated by combining a Use Subdistrict with a Development Subdistrict.***") (emphasis added).

In turn, Code Section 902.01.A.3(a) and (d) establishes the EMI and RIV Districts as "Special Purpose Districts," while Code Section 902.01.D.1(e) establishes the SP-5 District as a "Specially Planned District." In addition, Code Section 904.7 establishes the UI District as a "Mixed Use District," and Code Section 1101 outlines the designation and uses permitted in "Historic Districts."

In short, the District in which the Sign is located, and any of the Districts surrounding the Property, are not designated as a "residential . . . Zoning District" so that the ZBA's restrictive construction of 919.02.D.1 is clearly erroneous. Likewise, the ZBA erred in interpreting Code Section 919.02.C.3(d)(i) so restrictively as excluding new advertising signs in Districts adjacent to those zoned as a Historic District or the RIV District.[13]

---

(b) Development Subdistricts[:]

(1) VL - Very Low-Density[;]

(2) L - Low-Density[;]

(3) M - Moderate-Density[;]

(4) H - High-Density[;]

(5) VH - Very High-Density[.]

[13] Finally, the City asserts that there is substantial evidence to support the ZBA's findings. However, even assuming that this assertion is correct, the instant appeal involves the ZBA's **(Footnote continued on next page…)**

Accordingly, the trial court's order is affirmed.



MICHAEL H. WOJCIK, Judge

---

interpretation of the relevant provisions of the Code. Because this case is one of "statutory interpretation," it presents a question of law in which our standard of review is *de novo*, and our scope of review is plenary. *Czachowski*, 271 A.3d at 979 n.9.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ecarson Pitt Devco, LLC        :
       :
       v.        : No. 1538 C.D. 2023
       :
City of Pittsburgh Zoning        :
Board of Adjustment and        :
City of Pittsburgh,        :
       :
       Appellants    :

# **O R D E R**

AND NOW, this 18th day of December, 2024, the order of the Allegheny County Court of Common Pleas dated November 28, 2023, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge